**UNITED STATES DISTRICT COURT**
**for the**
**Northern District of Oklahoma**
**Civil Division**

| | | |
|---|---|---|
| **KEVIN VINCENT COX,** | ) | |
| ***Plaintiff*** | ) | |
| | ) | **CASE NO.** |
| -v- | ) | |
| | ) | |
| **DAVID BLAIR THOMPSON** | ) | **JUDGE** |
| **PARDEEP SINGH** | ) | |
| **SPARTA WEALTH PARTNERS** | ) | ***Jury Trial Requested*** |
| **DRAGON FLY CAPITAL PARTNERS, LLC** | ) | |
| **REALTA EQUITIES, INC.** | ) | |
| **SINE-PARI, LLC** | ) | |
| **INNOVATION PARTNERS, LLC** | ) | |

## JURISDICTION, VENUE, AND STANDING

1. Kevin V. Cox is and has been a resident of Oklahoma, and received investment advice from David Blair Thompson, Pardeep Singh, Sparta Wealth Partners, DragonFly Capital Partners, LLC, Realta Equities, Inc., Sine-Pari, LLC, and INNOVATION Partners, LLC.
2. David Blair Thompson, on information and belief, is a resident of North Carolina.
3. David Blair Thompson has been registered with FINRA as a General Securities Agent and an Investment Agent of REALTA EQUITIES, INC., as disclosed in the publicly filed FINRA CRD.

4. REALTA EQUITIES, INC. is a FINRA Registered Broker-Dealer located in Wilmington, Delaware.

5. David Blair Thompson provided investment advice, was to be compensated by, and was an agent of DragonFly Capital, LLC (see Exhibit "A"). However, such affiliation was not disclosed in his publicly filed CRD.

6. DragonFly Capital, LLC, is a South Carolina Limited Liability Company and a FINRA-registered Broker-Dealer.

7. David Blair Thompson, on information and belief, is a principal of, employed by, and registered with SPARTA WEALTH PARTNERS, also known as Total Solutions Enterprise, LLC.

8. Pardeep Singh ("Dr. Singh") is, on information and belief, a resident of North Carolina and is an unregistered investment advisor or securities dealer.

9. David Blair Thompson was previously registered with INNOVATION Partners LLC as a registered advisor.

10. INNOVATION Partners, LLC, on information and belief, raises capital and is a Registered Investment Advisor

11. DragonFly Capital, LLC, REALTA EQUITIES INC., as FINRA Broker-Dealers, have a statutory requirement to oversee and to manage their advisors, agents, and distributors of securities, such as David Blair Thompson.

12. INNOVATION Partners, LLC, SPARTA WEALTH PARTNERS, as Registered Investment Advisors, have a duty to oversee and to manage their advisors, agents, and distributors of securities and investment advice.

13. SINE-PARI, LLC is an "investment holding" and securities company owned by David Blair Thompson and disclosed as an outside business activity in his FINRA CRD.
14. Jurisdiction and Venue are proper as the instant civil causes of action arise under the Securities Exchange Act of 1934, the Securities Act of 1933, and the Investment Advisors Act of 1940, each of which requires such actions to be filed in a Federal District Court of the United States.
15. Mr. Cox is a resident of Tulsa County in the State of Oklahoma, and as the Plaintiff, the United States District Court for the Northern District of Oklahoma is a proper venue for this filing.
16. Mr. Cox recently discovered, within the last year, several causes of action for which he has a civil remedy against the Plaintiffs based upon their respective and collective actions. Therefore, such causes of action fall well within the federal five-year statutes of limitations for civil action under the Securities Exchange Act of 1934, the Securities Act of 1933, and the Investment Advisors Act of 1940.

**PETITION**

17. Mr. Cox was introduced to David Blair Thompson by Russ Sinacori, the Chairman of the Board of CAVU Resources, Inc., around January of 2021.
18. David Blair Thompson said that he was an investment advisor and could help Mr. Cox and CAVU Resources, Inc., with their investments, strategy, capital raising, and eventual Initial Public Offering.

19. Mr. Cox stated to Mr. Thompson that he needed his help, was glad to have it, and that the company CAVU Resources, Inc. was in the middle of acquisitions, capital raising, investment decision making, and could use an advisor.
20. Mr. Thompson, in April of 2021, introduced Mr. Cox to Don Millen, Jr, of DragonFly Capital LLC, a Broker Dealer and Investment Banker, who stated that he and Mr. Thompson would work together as financial advisors to Mr. Cox and to the company.
21. Mr. Thompson did not provide any disclosures to Mr. Cox, so Mr. Cox had to rely on Broker Check and Mr. Thompson's statements when he decided to accept the advice and to work with Don Millen, Jr.
22. On or about April 23, 2021, Kevin V. Cox and CAVU Resources, Inc. entered into an agreement with DragonFly Capital Partners, LLC, Don Millen, Jr., and David Blair Thompson wherein they would provide "exclusive" financial advisory and investment banking services to Mr. Cox and the company CAVU Resources, Inc. (see Exhibit "A")
23. The agreement stated that "DragonFly will work with and compensate David Blair Thompson for his 'industry' consulting services on this Transaction." The compensation scheme contemplated was a percentage of all securities Mr. Thompson provided advice on, issued, or sold.
24. Mr. Thompson did not disclose that he was associated with several entities, including that he was under contract with two broker-dealers and was an agent of both broker-dealers, and multiple registered investment advisory firms.
25. Mr. Cox, relying upon the advice of Mr. Thompson that he was able to raise capital for the company and his affiliation with DragonFly Capital Partners, LLC, recommended

that the Board of Directors at CAVU Resources, Inc., agree with Mr. Thompson and DragonFly Capital Patners, LLC to provide investment advice and to assist in raising capital for the company of approximately $30 million.

26. The only funds raised by David Blair Thompson and DragonFly Capital, LLC were $300,000 from an organization owned by Mr. Thompson and an individual that Mr. Thompson introduced to Mr. Cox and the company, Pardeep Singh.

27. Mr. Thompson introduced Mr. Cox to Mr. Singh as a well-known local investor who regularly issued securities and wrote instruments with investors in real estate projects he invested in.

28. On information and belief, David Blair Thompson is the owner of Sine-Pari, LLC, and such ownership is disclosed as an outside business activity on Broker-Check and stated to be an "investment holdings company". (see Exhibit "B").

29. On information and belief, Pardeep Singh regularly issues debt and equity securities to fund his real estate investments across the country.

30. The agreement stated DragonFly Capital, LLC, would receive 5% of the Gross Proceeds from the closing of a transaction and a monthly retainer of $7,500 in their effort to raise $30 million for the company.

31. Mr. Cox received no disclosure, information, and was not told the nature of, nor the fee structure between, Mr. Thompson and DragonFly Capital, LLC.

32. Relying on the advice of David Blair Thompson, Mr. Cox invested his own personal funds to pay the broker-dealer and investment advisor fees to DragonFly Capital, LLC.

33. Mr. Cox was aware that David Blair Thompson was a Registered Investment Advisor with multiple Registered Investment Advisor companies, but not that he was an agent of multiple Broker-Dealers.

34. Mr. Cox received no disclosure from Mr. Thompson related to the compensation he received from Mr. Cox's personal payments and investments he made to cover DragonFly Capital's broker-dealer, advisory, and investment banking fees.

35. At the time, Mr. Thompson was a FINRA Registered Investment Advisor and a Registered Broker (see Exhibit "B") and a financial advisor to Mr. Cox, Russ Sinacori, and CAVU Resources. Inc.

36. At the time, DragonFly Capital Partners, LLC was registered with the Securities Exchange Commission (see Exhibit "C").

37. At the same time, Mr. Cox was investing his own personal money and covering the advisory fees for DragonFly Capital. Mr. Thompson was providing investment advice to other clients through another investment advisor and broker-dealer.

38. It never occurred to Mr. Cox, a former FINRA registered individual, that Mr. Thompson was collecting fees from and under contract with multiple broker-dealers and investment advisors.

39. DragonFly Capital Partners and Mr. Thompson are federally licensed and registered Brokers and Investment Advisors who owed a fiduciary duty to Mr. Cox when they encouraged him to invest his own funds to cover the advisory fees for DragonFly Capital, to which Mr. Blair and DragonFly Capital, LLC, were receiving compensation for their advice to Mr. Cox.

40. Pardeep Singh, though not a registered person, on information and belief, is believed to be actively engaged in the unregistered distribution, sale, and formation of securities, and regularly worked with Mr. Thompson.

41. It remains unclear whether Pardeep Singh was working with DragonFly Capital, SPARTA, INNOVATION PARTNERS, Sine-Pari, LLC, or directly with Mr. Thompson, to issue equity and debt securities – for himself or for Mr. Cox.

42. Dragon Fly Capital, LLC, as a Registered Broker Dealer under the Securities Acts owed Mr. Cox, who was using personal funds to pay the advisory fees, a statutory and fiduciary duty to supervise the disclosure and regulatory compliance and activity of Mr. Thompson as a registered individual under contract with them and Pardeep Singh who, on information and belief, issues debt and equity security instruments to fund his various real estate projects.

43. Innovation Partners, LLC, as a registered investment advisor, owed Mr. Cox a statutory and fiduciary duty to supervise the disclosure and regulatory compliance and activity of Mr. Thompson as a registered individual under contract with them and Pardeep Singh, who, on information and belief, issues debt and equity security instruments to fund his various real estate projects.

44. Realta Equities, Inc. owed Mr. Cox a statutory and fiduciary duty to supervise the disclosure and regulatory compliance and activity of Mr. Thompson as a registered individual under contract with them and Pardeep Singh, who, on information and belief, issues debt and equity security instruments to fund his various real estate projects.

45. Pardeep Singh and Mr. Thompson (representing multiple broker dealers and investment advisory firms) met with Mr. Cox and CAVU Resources, Inc., wherein they advised each Mr. Cox, Mr. Sinacori, and CAVU Resources, Inc., in multiple roles, and as industry advisors, under their affiliation and contract with DragonFly Capital, et.al., to sign two Convertible Promissory Notes (securities) to which they could profit from the company.

46. Mr. Cox, who was personally funding the fees for the investment advice that Mr. Thompson and DragonFly Capital were giving to provide advice and to source capital, only received capital funding from David Blair Thompson through his investment and security holding company, Sine-Pari, LLC, and Mr. Thompson's affiliate, Pardeep Singh.

47. Mr. Cox received no disclosures from the various Broker Dealers, Investment Advisors, and Securities issuers, and the only capital the company received was a convertible debt instrument from the very advisors he was paying to provide advice and source capital from.

48. Mr. Thompson requested that Mr. Cox write the security instruments on behalf of the company, then edited them to ensure that his company received a high interest rate, exorbitant penalties, and, on information and belief, commissions from DragonFly Capital, LLC, a Broker Dealer, he was serving as an agent for (and as an agent for the other defendant broker dealers and registered investment advisor Defendants).

49. All of this, while receiving payments from DragonFly for giving Mr. Cox the advice to write, sign, and personally guaranty, convertible securities from his own firm and affiliates – all with no industry required disclosures.

50. The note specifically stated that upon default by the company, Sine-Pari. LLC and Pardeep Singh would receive any amount owed under the convertible note in the form of securities; however, they wanted Mr. Cox to personally guarantee the Notes. Relying on their advice, for which they were being compensated, and that Mr. Cox was paying them to give, he signed the Notes.

51. When the company couldn't pay the Notes, the company issued stock to Sine-Pari, LLC and Pardeep Singh. The parties continue to hold the converted stock but still sued Mr. Cox to recover cash, something they had advised him would not be a concern because the company could convert the debt security into an equity security upon default. This form of double recovery is against public policy and securities regulations.

52. DragonFly Capital, David Blair Thompson, SPARTA Wealth, Pardeep Singh, Realta Equities, Inc., Innovations Partners, LLC, and Sine-Pari, LLC provided Mr. Cox with no required disclosures, no qualifications, nor advised him as to their respective self-dealing, conflicts of interest, lack of registration, and engagement in the selling of securities without a license. They all failed in their regulatory requirement to provide proper supervision, sound advisory services, and to protect the financial investments of their clients, all while collecting a payment and fee from Mr. Cox's personal funds.

## COUNT ONE – CONSPIRACY

### 42 U.S.C. §1985, ET. AL.

53. The statements outlined in Paragraphs 1 through 52, are incorporated herein.

54. On information and belief, David Blair Thompson, DragonFly Capital Partners, Pardeep Singh, Sine-Pari, LLC, Sparta Wealth Partners, Innovation Partners, and Realta Equity Partners conspired together to issue unregistered securities, to fraudulently misrepresent the nature of the securities being issued, (specifically as to their convertible nature, and their hidden intent to double recover) while intentionally not disclosing their respective affiliations, "compensation", and conflicts of interests as required under the federal securities regulatory scheme.

55. In Exhibit "A", DragonFly Capital and David Blair Thompson stated they were working together.

56. In Exhibit "B", David Blair Thompson stated he was working for, with, and had ownership in Sine-Pari, LLC, Sparta Wealth Partners, Innovation Partners, LLC, and REALTA Equity Partners, LLC.

57. Mr. Singh and Sine-Pari, LLC, act in singularity with all actions as they pertain to Mr. Cox and, on information and belief, have an agreement in writing or a collective scheme to do so.

## COUNT TWO – WRONGFUL SECURITIES ISSUANCE

### US SECURITIES EXCHANGE ACT SECTION 10(B), AND RULE12(2) 10(B)(5), ET. AL.

58. The allegations in paragraphs 1 through 57 are incorporated herein.

59. The parties collectively are in the business of issuing securities and providing investment advice.

60. Mr. Cox assisted in the payment of fees to the parties for their investment advice, but with a convertible securities feature should the company default.

61. Their advice consisted of having Mr. Cox personally guarantee a convertible loan from the company he was CEO of, made out to themselves.

62. The securities Mr. Singh and Mr. Thompson issued, and advised Mr. Cox to sign, all under the supervision of their respective broker-dealers and registered investment advisory firms, were not registered, as likely required by the federal securities regulatory scheme. Mr. Cox was given no risk assessment, nor disclosures of any kind, as was required in accordance with an exception to registration under the Act. No outline of fees, commissions, interest, penalties, and risk that the Defendants would move for double recovery, converting into public security, while at the same time seeking cash from Mr. Cox.

63. The parties collectively sold the securities under their exclusive financial advisory agreement, which Mr. Cox assisted in funding with personal funds, without providing any disclosures that a placement memorandum would provide, nor any ADV, nor any required risk and compensation disclosure. This includes the failure to disclose their personal compensation and gain from their involvement in the issuance.

64. The parties received and continue to possess the stock that was converted into the public security, and yet continue to pursue Mr. Cox for damages and collection of

cash in addition to their stock – a form of "double-recovery," again without disclosure and proper registration.

65. Mr. Cox has suffered damage as a result, including approximately $50,000 he personally paid to DragonFly Capital, which contracted Blair Thompson to provide industry consulting advice for a fee – again without proper disclosure.

## COUNT THREE – FRAUD AND MISREPRESENTATION

## US SECURITIES EXCHANGE ACT SECTION 10(B), AND RULE 10(B)(5), ET AL.

66. The contract signed by Mr. Cox states that "DragonFly will work with and compensate Blair Thompson for his industry consulting services …"
67. Mr. Cox paid, personally, almost $50,000 for such advice.
68. Recently, Mr. Cox learned that Daivd Blair Thompson, Pardeep Singh, DragonFly Capital, Innovation Partners, Realta Equities, and Sparta Wealth Partners were all related parties.
69. Recently, Mr. Cox learned that the funds he was paying to DragonFly Capital, LLC were, on information and belief, also compensating Mr. Thompson.
70. Recently, Mr. Cox learned that Mr. Thompson did not list DragonFly Capital Partners LLC as a Broker Dealer he was affiliated with or receiving compensation from.
71. Recently, Mr Cox learned of several conflicts between the various parties with which Mr. Thompson was affiliated and receiving compensation from.

72. Recently, Mr. Cox learned that while Mr. Thompson and the other defendants were engaged in this activity, their respective broker-dealers and registered investment advisors were also unaware of such activity.

73. Mr. Cox was paying fees to DragonFly Capital for Investment advice, capital raising, and investment banking services for the company he was the CEO of. Mr. Thompson was being compensated for such advice as outlined in the contract with DragonFly Capital. The only capital raised by DragonFly, and the only real investment advice Mr. Cox received, after Mr. Cox paid approximately $50,000 in fees for such advice, was David Blair Thompson's advice to sign a convertible security, personally guaranty the security, that the company could pay the security in full with stock through a conversion upon default by the company, and that he should sign a similar security issued by Pardeep Singh who deals in securities under the same terms.

74. Then, upon signing such securities, when the company defaulted, Mr. Thompson and Pardeep Singh sued Mr. Cox, then advised him to sign a confession of judgment under duress, and continue to pursue Mr. Cox, even though they received and continue to hold the securities the company issued upon default under the contract.

75. The parties, acting in concert, on information and belief, misrepresented the nature of their respective relationships, negligently at best, though on information and belief, intentionally withheld the nature of their relationships, and compensation between them.

76. They fraudulently collected fees from Mr. Cox for giving advice, collected securities from the company upon the company's default, and now actively pursue Mr. Cox for

money from a note they fraudulently and intentionally mispresented the nature of the note to Mr. Cox.

77. Had the parties followed the regulatory scheme, provided the proper disclosures, not withheld them, properly advised Mr. Cox (advice he paid them to give), Mr. Cox would never have signed the agreement, or if he had, would have known double recovery was a likely outcome.

78. As a direct result of Mr. Cox's reliance on the fiduciary duties and the relationship of all the Defendants, their intentional failure to adequately disclose their respective relationships, which Mr. Cox only recently discovered, Mr. Cox has paid $50,000 of personal funds to compensate the Broker Dealers and Mr. Thompson for investment advice, he has incurred extensive legal fees, was forced by the Defendants to sign a confession of judgement BEFORE he was aware of conflicts, selling away, misrepresentation, fraud, and wrongful issuance of securities under the regulatory scheme, public spectacle, contractual damages the Defendants knew or should have known would result from their actions, and endured enormous stress.

79. In contrast, the parties continue their attempt to engage in double recovery, to hide their actions, and continue their attempt to collect more of Mr. Cox's hard-earned money.

80. As regulated providers, the Defendants collectively and individually, all subject to extensive federal securities regulation, disclosure, oversight, and compliance requirements, failed to follow the rules, provide oversight, and deal with Mr. Cox, funding their advisory fees, and, per se, perpetrated a fraud on Mr. Cox, and

misrepresentation to the trusting public, of which Mr. Cox is a member, their tightly knit affiliations and relationships.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment in its favor and grant the following relief:

1) Award Plaintiff damages for $1.500,000 for actual and compensatory damage or another amount to be determined at trial, sufficient to compensate for all losses incurred because of Defendant's Actions.
2) In addition, Plaintiff seeks statutory rescission for the wrongfully issued securities at the heart of the instant action.
3) Award Plaintiff reasonable attorneys' fees and costs incurred for taking this action as allowable by law,
4) Award Plaintiff such other and further relief as the Court deems just and proper.

**CERTIFICATION:**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Signature on following Page)

Kevin V. Cox, Esq.

OBA #20970

Kevin V., Cox, PLLC

320 S. Boston Ave. Suite 1020

Tulsa, OK 74103

kvc@visionarylaw.org

(918)984-2410
www.visionarylaw.org

**EXHIBIT A**

Dragonfly CAPITAL

April 23, 2021

**STRICTLY CONFIDENTIAL**
[redacted]
Mr. Kevin Cox
Chief Executive Officer
Mr. Russ Sinacori
Chief Operating Officer
CAVU Resources, Inc. (dba "Live to be Happy")
[redacted]

**RE: Financial Advisory/Investment Banking Agreement**

Dear Bob, Kevin, and Russ

This letter constitutes the agreement ("Agreement") between CAVU [redacted] and affiliates and successors (the "Company") and Dragonfly Capital Partners, LLC and its affiliates ("Dragonfly") that Dragonfly will serve as the exclusive financial advisor to the Company for a capital raise of approximately $2[redacted]on (or other similar transactions that provide capital to the Company, its lenders, or its shareholders (collectively, the "Transaction")) upon the following terms and conditions:

1) **Advisory Services**. During the term of this engagement, Dragonfly will provide the Company with financial advice and assistance in connection with the Transaction, which may involve, to the extent requested by you and appropriate for the Transaction,
   - Assisting in the preparation of confidential material describing the Company for distribution to potentially interested parties,
   - Reviewing and compiling financial information,
   - Identifying and contacting potential parties to a Transaction,
   - Preparing management to meet with prospective investors including materials needed for such presentations,
   - Assisting buyers with due diligence, and
   - Negotiating the financial terms and structure of a Transaction.

Dragonfly will work with and compensate Blair Thompson for his industry consulting services on this Transaction.

In order to coordinate the efforts in connection with a Transaction, the Company and Dragonfly promptly will inform and [redacted]ection with a Transact[redacted]onduct any independen[redacted] of the Company.

If the Company should request us to provide additional services not otherwise contemplated by this letter agreement, the Company and Dragonfly will enter into an additional letter agreement which will set forth the nature and scope of the services, appropriate compensation and other customary matters, as mutually agreed upon by the Company and Dragonfly.

2) **Compensation**. Dragonfly shall be compensated for performing the Advisory Services according to the following terms:

a) **Advisory Fee** – The Company will pay to Dragonfly an advisory fee upon the close of a Transaction of [redacted]f Gross Proceeds in the Transaction. The Advisory Fee shall be paid out of Gross Proceeds, in cash via wire transfer at the time of close and will be due upon the close of the Transaction(s).

As used in this Agreement, "Gross Proceeds" means the total value of all consideration (including cash, securities or other property and any dividends paid by the Company on or after receipt of an appropriate offer from a qualified buyer) paid or received or to be paid or received, directly or indirectly, in connection with a Transaction in respect of the assets of the Company or the outstanding securities of the Company on a fully diluted basis (treating any securities issuable upon the exercise of options, warrants or other convertible securities and any securities to be redeemed as outstanding), plus the amount of any debt (including capitalized leases) and any other liabilities of the Company outstanding or assumed, refinanced or extinguished in connection with a Transaction, and amounts payable in connection with a Transaction in respect of employment or consulting agreements, agreements not to compete or similar arrangements.

If a Transaction is consummated through [redacted] the Company's securities or assets (such as a Recapitalization where the seller(s) reinvests a portion of the proceeds back into the Company), the Gross Proceeds (from which the Advisory Fee is based) shall be [redacted] Company's securities had been sold at the same per share value as in the Transaction. For example, if the Gross Proceeds or Enterprise Value agreed to in a Transaction is [redacted] the owners of the Company elect to reinvest $3 million of the proceeds into the Buyer or back into the Company, the Advisory Fee shall still be calculated based on upon [redacted] Gross Proceeds or Enterprise Value.

If any portion of Gross Proceeds is payable in the form of securities, the value of such securities, for purposes of calculating the Advisory Fee, [redacted] Advisory Fee will be determined based on the fair market value of such securities as mutually agreed upon in good faith by the Company and Dragonfly prior to the closing of the Transaction.

Fees [redacted] will be paid when those contingent payments are paid to the Company or its shareholders.

Notwithstanding any other provision in this Agreement, the minimum Advisory Fee paid to Dragonfly at the close of a Transaction [redacted].

b) **Equity Participation Fee** – The Company will issue to Dragonfly an equity fee (the "Equity Participation Fee") in the form of warrants (the "Warrants") convertible into an aggregate of two

percen[redacted]iluted shares of the Company at the time of the Transaction(s) (i.e., the Warra[redacted]nt to[redacted]e fully diluted shares upon the completion of the last of the Transactions.) Warrants [redacted] a nominal per share exercise price, shall have 'cashless' exercise provisions, shall expire ten years from the date of issue, shall be issuable in the name of Dragonfly or its designees, shall not be restricted (nor shall the shares related to the Warrants) and shall carry the same legal, informational and economic terms and rights as the securities issued in connection with the Transaction. Payment of the Equity Participation Fee will be due upon the closing of the Transaction(s) and will be a condition to the closing of such Transaction

c) **Retainer** – Dragonfly shall be paid a monthly retainer [redacted] the Company upon the receipt of a commitment le[redacted]lion in debt. Th[redacted]me day of each following month until the close of a [redacted]ansaction or the termination of this Agreement. Payment of the retainers [redacted] wire transfer (or ACH deposit) to Dragonfly's parent and shall be non-refundable. Retainers paid shall be an offset to the Advisory Fee in Section 2.a.

d) **Transaction Termination Fee** – Dragonfly shall be paid a one-time termination fee of[redacted] if the Company elects not to proceed in the Transaction process for any reason (which[redacted] its prerogative.)

e) **Transaction Expenses and Legal Compliance** - The Company agrees to periodically reimburse Dragonfly promptly when invoiced for all of its reasonable out-of-pocket expenses including travel, an on-line data room for buyer due diligence, and reasonable attorney's fees in connection with the performance of its services hereunder, regardless of whether a Transaction occurs. Subject to the foregoing, upon termination of this Agreement or completion of a Transaction, the Company agrees to pay promptly any unreimbursed expenses that have accrued as of such date.

3) **Term.** Either party may terminate this Agreement at any time upon thirty (30) days advance written notice [redacted]pany will pay Dragonfly the Advisory Fee if, at any time within twenty-[redacted]ation of this Agreement, a Transaction is consummated (or an offer le[redacted]action is later consummated) with or through any party that had discuss[redacted]n with the Company during the term of this Agreement.

4) **Confidentiality.** Dragonfly and the Company will treat all information regarding this Agreement confidential and will not disclose such information to other parties without prior consent of the other party, except as may be required by applicable law. Without prior consent of the Company, Drag[redacted]all not d[redacted]ny (nor [redacted]ith parties introduced by Dragonfly except with relation to the Company's business and the Transaction.

5) **Advertisements.** In the event of consummation of a Transaction, Dragonfly shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder, provided that Dragonfly will submit a copy of any such advertisements to the Company for its approval prior to any such publication, which approval shall not be unreasonably withheld.

6) **Indemnification.** As Dragonfly will be acting on the Company's behalf, the Company agrees to indemnify Dragonfly and its related parties.

7) **Governing Law; Jurisdiction; Waiver of Jury Trial.** This letter agreement will be govemed by and construed in accordance with the laws of the State of North Carolina without regard to principles

of conflicts of law. The Company irrevocably submits to the jurisdiction of any court of the State of North Carolina for the purpose of any suit, action or other proceeding arising out of this letter agreement or our engagement hereunder. Each of the Company and Dragonfly hereby waives any right it may have to a trial by jury in respect of any claim brought by or on behalf of either party based upon, arising out of or in connection with this Agreement, our engagement hereunder or the transactions contemplated hereby. Any dispute arising hereunder, if not settled by mutual agreement, shall, at either party's option, and, upon written notice by one party to the other, be settled by final and binding arbitration in Charlotte, North Carolina. The arbitration shall be conducted in accordance with the Commercial Dispute Resolution Procedures and Rules of the American Arbitration Association ("AAA Rules") by a single disinterested arbitrator appointed in accordance with such AAA Rules.

For the purpose of clarity, no amendment or waiver of any provision of this Agreement, nor consent to any departure by the Company therefrom, shall in any event be effective unless the same shall be in writing and signed by the Company and Dragonfly and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

If the foregoing correctly sets forth the understanding and agreement between Dragonfly and the Company, please so indicate in the space provided below, whereupon this letter will constitute a binding agreement as of the date first above written. Each signor below is legally titled to bind their organization to this Agreement.

Very truly yours,

**DRAGONFLY CAPITAL PARTNERS, LLC**

By: Don Millen

**Don W. Millen, Jr.**
**Managing Director**

Agreed to and accepted as of the above date.

**CAVU RESOURCES, INC.**
**(dba "LIVE TO BE HAPPY")**

[redacted]

By: [redacted]
**Kevin Cox**
[redacted]

By: [redacted]
**Russ Sinacori**
**Chief Operating Officer**

# EXHIBIT B

**BrokerCheck Report**

# DAVID BLAIR THOMPSON

CRD# 5120504


| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 4 |
| Registration and Employment History | 6 - 8 |
| Disclosure Events | 9 |


When communicating online or investing with any professional, make sure you know who you're dealing with. Imposters might link to sites like BrokerCheck from phishing or similar scam websites, or through social media, trying to steal your personal information or your money.

Please contact FINRA with any concerns.

FINRA

**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.
-

**Thank you for using FINRA BrokerCheck.**

Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org

For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

**DAVID B. THOMPSON**
CRD# 5120504

**Currently employed by and registered with the following Firm(s):**

IA **SPARTA WEALTH PARTNERS**
4500 CAMERON VALLEY PARKWAY
SUITE 130
CHARLOTTE, NC 28211
CRD# 318036
Registered with this firm since: 01/26/2022

B **REALTA EQUITIES, INC.**
4500 Cameron Valley Parkway
Suite 130
Charlotte, NC 28211
CRD# 23769
Registered with this firm since: 05/12/2023

# Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

## Broker Qualifications

**This broker is registered with:**

- 1 Self-Regulatory Organization
- 16 U.S. states and territories

**This broker has passed:**

- 0 Principal/Supervisory Exams
- 3 General Industry/Product Exams
- 2 State Securities Law Exams

## Registration History

**This broker was previously registered with the following securities firm(s):**

B **INNOVATION PARTNERS LLC**
CRD# 146344
CHARLOTTE, NC
12/2022 - 04/2023

B **J. ALDEN ASSOCIATES, INC.**
CRD# 40002
WAYNE, PA
02/2020 - 12/2022

IA **ALDEN CAPITAL**
CRD# 293551
WAYNE, PA
06/2020 - 04/2022

## Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker? **Yes**

**The following types of disclosures have been reported:**

| Type | Count |
| --- | --- |
| Termination | 1 |

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

## Broker Qualifications

### Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 1 SRO and is licensed in 16 U.S. states and territories through his or her employer.**

### Employment 1 of 2

Firm Name: **REALTA EQUITIES, INC.**

Main Office Address: **1201 N. ORANGE STREET**
**SUITE 300**
**WILMINGTON, DE 92130**

Firm CRD#: **23769**

| SRO | Category | Status | Date |
|---|---|---|---|
| B FINRA | General Securities Representative | Approved | 05/12/2023 |

| U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|
| B Alabama | Agent | Approved | 06/20/2024 |
| B Florida | Agent | Approved | 05/12/2023 |
| B Georgia | Agent | Approved | 09/30/2024 |
| B Louisiana | Agent | Approved | 10/30/2024 |
| B Maryland | Agent | Approved | 02/22/2024 |
| B Nevada | Agent | Approved | 05/12/2023 |
| B New Mexico | Agent | Approved | 05/22/2023 |
| B New York | Agent | Approved | 02/14/2024 |
| B North Carolina | Agent | Approved | 05/15/2023 |
| B Ohio | Agent | Approved | 09/02/2025 |
| B Oregon | Agent | Approved | 05/24/2024 |
| B Pennsylvania | Agent | Approved | 06/07/2023 |

�2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

## Broker Qualifications

### Employment 1 of 2, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | South Carolina | Agent | Approved | 05/12/2023 |
| B | South Dakota | Agent | Approved | 01/13/2025 |
| B | Virginia | Agent | Approved | 06/17/2024 |
| B | Wyoming | Agent | Approved | 09/24/2024 |

### Branch Office Locations

**REALTA EQUITIES, INC.**
4500 Cameron Valley Parkway
Suite 130
Charlotte, NC 28211

### Employment 2 of 2

Firm Name: **SPARTA WEALTH PARTNERS**
Main Office Address: **4500 CAMERON VALLEY PARKWAY**
**SUITE 130**
**CHARLOTTE, NC 28211**
Firm CRD#: **318036**

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| IA | North Carolina | Investment Adviser Representative | Approved | 04/18/2022 |

### Branch Office Locations

4500 CAMERON VALLEY PARKWAY
SUITE 130
CHARLOTTE, NC 28211

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

## Broker Qualifications

### Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below. A passed exam or exam waiver does not permit a broker to do business without an active SRO or state registration.

**This individual has passed 0 principal/supervisory exams, 3 general industry/product exams, and 2 state securities law exams.**

### Principal/Supervisory Exams

| Exam | Category | Date |
|---|---|---|
| No information reported. | | |

### General Industry/Product Exams

| | Exam | Category | Date |
|---|---|---|---|
| B | Securities Industry Essentials Examination | SIE | 10/01/2018 |
| B | General Securities Representative Examination | Series 7 | 06/19/2018 |
| B | Investment Company Products/Variable Contracts Representative Examination | Series 6 | 03/31/2006 |

### State Securities Law Exams

| | Exam | Category | Date |
|---|---|---|---|
| IA | Uniform Investment Adviser Law Examination | Series 65 | 02/08/2010 |
| B | Uniform Securities Agent State Law Examination | Series 63 | 04/05/2006 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

# Broker Qualifications

## Professional Designations

This section details that the representative has reported **0** professional designation(s).

No information reported.

�2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

# Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| B | 12/2022 - 04/2023 | INNOVATION PARTNERS LLC | 146344 | CHARLOTTE, NC |
| B | 02/2020 - 12/2022 | J. ALDEN ASSOCIATES, INC. | 40002 | WAYNE, PA |
| IA | 06/2020 - 04/2022 | ALDEN CAPITAL | 293551 | Charlotte, NC |
| IA | 06/2018 - 12/2019 | TD PRIVATE CLIENT WEALTH LLC | 164484 | Charlotte, NC |
| B | 06/2018 - 12/2019 | TD PRIVATE CLIENT WEALTH LLC | 164484 | Charlotte, NC |
| IA | 12/2014 - 05/2018 | CETERA INVESTMENT ADVISERS LLC | 105644 | CHARLOTTE, NC |
| B | 12/2014 - 05/2018 | CETERA INVESTMENT SERVICES LLC | 15340 | ST. CLOUD, MN |
| IA | 09/2012 - 10/2014 | CERTUS INVESTMENT ADVISORS, LLC | 159221 | ATLANTA, GA |
| B | 09/2012 - 10/2014 | CERTUSSECURITIES, INC. | 144051 | CHARLOTTE, NC |
| IA | 08/2011 - 06/2012 | CAPITAL INVESTMENT ADVISORY SERVICES, LLC | 149124 | RALEIGH, NC |
| B | 08/2011 - 06/2012 | CAPITAL INVESTMENT GROUP, INC. | 14752 | CHARLOTTE, NC |
| IA | 02/2010 - 08/2011 | PARK AVENUE SECURITIES LLC | 46173 | CHARLOTTE, NC |
| B | 09/2009 - 08/2011 | PARK AVENUE SECURITIES LLC | 46173 | CHARLOTTE, NC |
| B | 04/2006 - 07/2009 | NEW ENGLAND SECURITIES | 615 | CHARLOTTE, NC |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

**Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.**

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 05/2023 - Present | REALTA EQUITIES, INC. | REGISTERED REPRESENTATIVE | Y | WILMINGTON, DE, United States |

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

## Registration and Employment History

### Employment History, continued

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 12/2022 - 05/2023 | Innovation Partners LLC | Registered Representative | Y | Charlotte, NC, United States |
| 02/2020 - 05/2023 | J Alden Associates, Inc. | REGISTERED REP | Y | Jenkintown, PA, United States |
| 04/2018 - 11/2019 | TD Bank N.A. | Relationship Manager | Y | Greenville, SC, United States |
| 04/2018 - 11/2019 | TD Private Client Wealth LLC | Registered Rep | Y | Greenville, SC, United States |
| 12/2014 - 04/2018 | CETERA INVESTMENT ADVISERS LLC | IAR REGISTERED REP | Y | CHARLOTTE, NC, United States |
| 12/2014 - 04/2018 | CETERA INVESTMENT SERVICES LLC | REGISTERED REP | Y | ST. CLOUD, MN, United States |
| 11/2014 - 04/2018 | REGIONS BANK | REGISTERED REP | N | CHARLOTTE, NC, United States |

### Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

1) Insurance Sales; Life, Disability, Long Term Care; Non Investment Related; 3 hours per month.

2) DBT Consulting LLC; Charlotte, NC; this is a consulting business and not investment related. Consulting entity setup to team and engage with outside entities for technology acceleration, government contracting, recruiting or other non-investment related activities; compensation: split of consulting fees or commissions for engagements; single member llc; 5 hours per week some during normal trading hours.

3) Total Solutions Enterprise LLC (DBA Sparta Welath Partners); Charlotte, NC; RIA/Multi Family office; www.spartawp.com; President, Managing Partner; 30 hours per week during normal trading hours.

4) Total Solutions Enterprise Holding LLC; holding entity.

5) Customized lending referrals; Non Investment Related.

6) Sine Pari; Investment holding company.

7) Backstage Pass LLC; pass through for rental real estate income and fixed insurance sales or trails; spartawp.com; single member, llc; 1 hours per week some during normal trading hours.

8) Thompson Capital Partners; investment holding company.

�2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

# Registration and Employment History

## Other Business Activities, continued

9) Aware; start: 3/2024; biometric wearables and monitoring healthcare company; www.awarecbw.com; advisory board role; % of equity; 1 hour per week some during normal trading hours.

10) DBT Consulting, LLC; consulting referrals, captive insurance administration; spartawp.com; referrals and introductions; Compensation - portion of setup and premiums for the client; .5 hours per week some during normal trading hours.

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

## Disclosure Events

**What you should know about reported disclosure events:**

1. All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

2. **Certain thresholds must be met before an event is reported to CRD, for example:**
   - A law enforcement agency must file formal charges before a broker is required to disclose a particular criminal event.
   - A customer dispute must involve allegations that a broker engaged in activity that violates certain rules or conduct governing the industry and that the activity resulted in damages of at least $5,000.
   -

3. **Disclosure events in BrokerCheck reports come from different sources:**
   - As mentioned at the beginning of this report, information contained in BrokerCheck comes from brokers, brokerage firms and regulators. When more than one of these sources reports information for the same disclosure event, all versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.
   -

4. **There are different statuses and dispositions for disclosure events:**
   - A disclosure event may have a status of *pending, on appeal,* or *final.*
     - A "pending" event involves allegations that have not been proven or formally adjudicated.
     - An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
     - A "final" event has been concluded and its resolution is not subject to change.
   - A final event generally has a disposition of *adjudicated, settled* or *otherwise resolved.*
     - An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
     - A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that brokers and brokerage firms may choose to settle customer disputes or regulatory matters for business or other reasons.
     - A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

**For your convenience, below is a matrix of the number and status of disclosure events involving this broker. Further information regarding these events can be found in the subsequent pages of this report. You also may wish to contact the broker to obtain further information regarding these events.**

| | Pending | Final | On Appeal |
|---|---|---|---|
| Termination | N/A | 1 | N/A |

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

## Disclosure Event Details

When evaluating this information, please keep in mind that a discloure event may be pending or involve allegations that are contested and have not been resolved or proven. The matter may, in the end, be withdrawn, dismissed, resolved in favor of the broker, or concluded through a negotiated settlement for certain business reasons (e.g., to maintain customer relationships or to limit the litigation costs associated with disputing the allegations) with no admission or finding of wrongdoing.

This report provides the information exactly as it was reported to CRD and therefore some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

### Employment Separation After Allegations

This type of disclosure event involves a situation where the broker voluntarily resigned, was discharged, or was permitted to resign after being accused of (1) violating investment-related statutes, regulations, rules or industry standards of conduct; (2) fraud or the wrongful taking of property; or (3) failure to supervise in connection with investment-related statutes, regulations, rules, or industry standards of conduct.

**Disclosure 1 of 1**

| | |
|---|---|
| **Reporting Source:** | Firm |
| **Employer Name:** | TD Private Client Wealth LLC |
| **Termination Type:** | Discharged |
| **Termination Date:** | 11/06/2019 |
| **Allegations:** | An internal review concluded on 11/05/2019 that the individual was engaged in the sale of insurance products without prior Firm approval |
| **Product Type:** | Insurance |

| | |
|---|---|
| **Reporting Source:** | Broker |
| **Employer Name:** | TD Private Client Wealth LLC |
| **Termination Type:** | Discharged |
| **Termination Date:** | 11/06/2019 |
| **Allegations:** | Violation of firm policies concerning disclosure and approval of Outside Business Activities and selling away. |
| **Product Type:** | Insurance |
| **Broker Statement** | Both direct and regional supervisory management were aware of me having active licenses verbally, in writing and via always publicly available information of my insurance licenses being active for 15 years prior to and during employment. I was even instructed to maintain these licenses as part of the firm's recruitment and |

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

employment transition strategies discussed on several occasions amidst four separate leadership changes and reorganizations within the business unit during my tenure. Discussion and inclusion of insurance strategies as part of financial planning and relationship management is also even listed on the compliance approved role description and client approved marketing materials provided by and encouraged by the firm. This situation is clearly more as a result of me advocating for my client's best interests as someone who cares - both as a licensed fiduciary and holding the firm accountable for its commitments to client solutions and needs.

�2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

# End of Report

This page is intentionally left blank.

©2025 FINRA. All rights reserved. Report about DAVID B. THOMPSON.

**EXHIBIT C**

FINRA

**BrokerCheck Report**

# DRAGONFLY CAPITAL PARTNERS, LLC

CRD# 125199



| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Firm Profile | 2 - 6 |
| Firm History | 7 |
| Firm Operations | 8 - 13 |



When communicating online or investing with any professional, make sure you know who you're dealing with. Imposters might link to sites like BrokerCheck from phishing or similar scam websites, or through social media, trying to steal your personal information or your money.

Please contact FINRA with any concerns.

**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.
-

**Thank you for using FINRA BrokerCheck.**

Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at brokercheck.finra.org

For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

## DRAGONFLY CAPITAL PARTNERS, LLC

CRD# 125199

SEC# 8-65772

### Main Office Location

694 PAWLEY RD
SUITE 101
MT PLEASANT, SC 29464
Regulated by FINRA Atlanta Office

### Mailing Address

694 PAWLEY RD
SUITE 101
MT PLEASANT, SC 29464

### Business Telephone Number

7044887712

## Report Summary for this Firm

This report summary provides an overview of the brokerage firm. Additional information for this firm can be found in the detailed report.

### Firm Profile

This firm is classified as a limited liability company.

This firm was formed in North Carolina on 08/17/2001.

Its fiscal year ends in December.

### Firm History

Information relating to the brokerage firm's history such as other business names and successions (e.g., mergers, acquisitions) can be found in the detailed report.

### Firm Operations

**This firm is registered with:**

- the SEC
- 1 Self-Regulatory Organization
- 4 U.S. states and territories

Is this brokerage firm currently suspended with any regulator? **No**

This firm conducts 2 types of businesses.

This firm is not affiliated with any financial or investment institutions.

This firm does not have referral or financial arrangements with other brokers or dealers.

### Disclosure Events

Brokerage firms are required to disclose certain criminal matters, regulatory actions, civil judicial proceedings and financial matters in which the firm or one of its control affiliates has been involved.

Are there events disclosed about this firm? **No**

©2025 FINRA. All rights reserved.

## Firm Profile

This firm is classified as a limited liability company.

This firm was formed in North Carolina on 08/17/2001.

Its fiscal year ends in December.

## Firm Names and Locations

This section provides the brokerage firm's full legal name, "Doing Business As" name, business and mailing addresses, telephone number, and any alternate name by which the firm conducts business and where such name is used.

**DRAGONFLY CAPITAL PARTNERS, LLC**

**Doing business as DRAGONFLY CAPITAL PARTNERS, LLC**

**CRD#** 125199

**SEC#** 8-65772

**Main Office Location**

694 PAWLEY RD
SUITE 101
MT PLEASANT, SC 29464

**Regulated by FINRA Atlanta Office**

**Mailing Address**

694 PAWLEY RD
SUITE 101
MT PLEASANT, SC 29464

**Business Telephone Number**

7044887712

©2025 FINRA. All rights reserved. 

## Firm Profile

This section provides information relating to all direct owners and executive officers of the brokerage firm.

### Direct Owners and Executive Officers

| | |
|---|---|
| **Legal Name & CRD# (if any):** | DRAGONFLY CAPITAL MANAGEMENT COMPANY, LLC |
| **Is this a domestic or foreign entity or an individual?** | Domestic Entity |
| **Position** | SHAREHOLDER |
| **Position Start Date** | 07/2002 |
| **Percentage of Ownership** | 75% or more |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | MILLEN, DONALD WOFFORD JR<br>3109616 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | MANAGER, DP, CSO, FINOP, CCO |
| **Position Start Date** | 07/2002 |
| **Percentage of Ownership** | Less than 5% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | USHER, RENE MATTHEWS<br>2433659 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | MANAGER, REGISTERED PRINCIPAL, ASO |
| **Position Start Date** | 07/2002 |

©2025 FINRA. All rights reserved. 

# Firm Profile

## Direct Owners and Executive Officers (continued)

| | |
|---|---|
| **Percentage of Ownership** | Less than 5% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

©2025 FINRA. All rights reserved. 

## Firm Profile

This section provides information relating to any indirect owners of the brokerage firm.

### Indirect Owners

| | |
|---|---|
| **Legal Name & CRD# (if any):** | MILLEN, DONALD WOFFORD JR<br>3109616 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Company through which indirect ownership is established** | SV ALG, LLC |
| **Relationship to Direct Owner** | MEMBER |
| **Relationship Established** | 01/2019 |
| **Percentage of Ownership** | 75% or more |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | MILLEN, DONALD WOFFORD JR<br>3109616 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Company through which indirect ownership is established** | SCARLET VENTURES, LLC |
| **Relationship to Direct Owner** | MEMBER |
| **Relationship Established** | 07/2002 |
| **Percentage of Ownership** | 50% but less than 75% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | SCARLET VENTURES, LLC |

©2025 FINRA. All rights reserved.

# Firm Profile

## Indirect Owners (continued)

| | |
|---|---|
| **Is this a domestic or foreign entity or an individual?** | Domestic Entity |
| **Company through which indirect ownership is established** | DRAGONFLY CAPITAL MGMT CO, LLC |
| **Relationship to Direct Owner** | MEMBER |
| **Relationship Established** | 07/2002 |
| **Percentage of Ownership** | 50% but less than 75% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | SV ALG, LLC |
| **Is this a domestic or foreign entity or an individual?** | Domestic Entity |
| **Company through which indirect ownership is established** | DRAGONFLY CAPITAL MANAGMENT CO., LLC |
| **Relationship to Direct Owner** | MEMBER |
| **Relationship Established** | 01/2019 |
| **Percentage of Ownership** | 50% but less than 75% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

©2025 FINRA. All rights reserved.

## Firm History

This section provides information relating to any successions (e.g., mergers, acquisitions) involving the firm.

No information reported.

©2025 FINRA. All rights reserved. 

## Firm Operations

### Registrations

This section provides information about the regulators (Securities and Exchange Commission (SEC), self-regulatory organizations (SROs), and U.S. states and territories) with which the brokerage firm is currently registered and licensed, the date the license became effective, and certain information about the firm's SEC registration.

**This firm is currently registered with the SEC, 1 SRO and 4 U.S. states and territories.**

| Federal Regulator | Status | Date Effective |
|---|---|---|
| SEC | Approved | 07/11/2003 |

### SEC Registration Questions

This firm is registered with the SEC as:

A broker-dealer: Yes

A broker-dealer and government securities broker or dealer: No

A government securities broker or dealer only: No

This firm has ceased activity as a government securities broker or dealer: No

| Self-Regulatory Organization | Status | Date Effective |
|---|---|---|
| FINRA | Approved | 07/11/2003 |

©2025 FINRA. All rights reserved.

## Firm Operations

### Registrations (continued)

| U.S. States & Territories | Status | Date Effective |
| --- | --- | --- |
| Louisiana | Approved | 06/04/2025 |
| New York | Approved | 06/29/2004 |
| North Carolina | Approved | 07/14/2003 |
| South Carolina | Approved | 02/10/2023 |

©2025 FINRA. All rights reserved.

# Firm Operations

## Types of Business

This section provides the types of business, including non-securities business, the brokerage firm is engaged in or expects to be engaged in.

**This firm currently conducts 2 types of businesses.**

### Types of Business

| |
|---|
| Private placements of securities |
| Other - DRAGONFLY CAPITAL PARTNERS, LLC WILL PARTICIPATE IN MERGER AND ACQUISITION WORK. |

### Other Types of Business

This firm does not effect transactions in commodities, commodity futures, or commodity options.
This firm does not engage in other non-securities business.

Non-Securities Business Description:

©2025 FINRA. All rights reserved.

# Firm Operations

## Clearing Arrangements

This firm does not hold or maintain funds or securities or provide clearing services for other broker-dealer(s).

## Introducing Arrangements

This firm does not refer or introduce customers to other brokers and dealers.

©2025 FINRA. All rights reserved.

# Firm Operations

## Industry Arrangements

**This firm does not have books or records maintained by a third party.**

**This firm does not have accounts, funds, or securities maintained by a third party.**

**This firm does not have customer accounts, funds, or securities maintained by a third party.**

### Control Persons/Financing

**This firm does not have individuals who control its management or policies through agreement.**

**This firm does not have individuals who wholly or partly finance the firm's business.**

©2025 FINRA. All rights reserved.

# Firm Operations

## Organization Affiliates

This section provides information on control relationships the firm has with other firms in the securities, investment advisory, or banking business.

**This firm is not, directly or indirectly:**

- **in control of**
- **controlled by**
- **or under common control with**

**the following partnerships, corporations, or other organizations engaged in the securities or investment advisory business.**

**This firm is not directly or indirectly, controlled by the following:**

- **bank holding company**
- **national bank**
- **state member bank of the Federal Reserve System**
- **state non-member bank**
- **savings bank or association**
- **credit union**
- **or foreign bank**

©2025 FINRA. All rights reserved. 

**End of Report**

**This page is intentionally left blank.**

©2025 FINRA. All rights reserved.