**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

KEVIN VINCENT COX,                              )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )        Case No. 25-CV-0544-CVE-SH
                                                )
DAVID BLAIR THOMPSON,                           )
PRADEEP SINGH,                                  )
TOTAL SOLUTIONS ENTERPRISE, LLC                 )
(d/b/a SPARTA WEALTH PARTNERS),                 )
DRAGON FLY CAPITAL PARTNERS, LLC,               )
REALTA EQUITIES, INC.,                          )
SINE-PARI, LLC, and                             )
INNOVATION PARTNERS, LLC                        )
                                                )
            Defendants.                         )

**OPINION AND ORDER**

Now before the court are a motion to dismiss for failure to state a claim by defendant Realta

Equities, Inc. (Dkt. # 8), a motion to dismiss for lack of personal jurisdiction by defendants David

Blair Thompson, Pradeep Singh, Sine-Pari, LLC, and Total Solutions Enterprise, LLC (d/b/a Sparta

Wealth Partners) (Dkt. # 25).  Also before the Court are plaintiff Kevin Vincent Cox's  motions for

a preliminary injunction and temporary restraining order (Dkt. ## 30, 31), as well as a motion for

leave to add a plaintiff (Dkt. # 45).  Plaintiff, a resident of Oklahoma who is proceeding pro se,

alleges three counts against Thompson, Singh, Dragon Fly Capital Partners, LLC ("DragonFly"),

Realta Equities, Inc. ("Realta"), Sine-Pari, LLC ("Sine-Pari"), Innovation Partners, LLC ("Innovation

Partners"), and Total Solutions Enterprise, LLC (d/b/a Sparta Wealth Partners) ("Sparta").

Plaintiff's claims arise out of his engagement of defendants for investment advice.  Plaintiff asserts

that defendants acted in concert to misrepresent their relationships, fraudulently collect fees, and

cause him to sign two promissory notes.  Plaintiff also alleges that defendants failed to provide him

with requisite disclosures that revealed the relationships and fee structures among defendants. Based on these allegations, plaintiff alleges one count of conspiracy under 42 U.S.C. § 1985. Plaintiff also alleges one count of "wrongful securities issuance" arising under section § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a et seq., § 78j(b), and under § 12 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a et seq., § 77*l*(a)(2), as well as under Securities and Exchange Commission (SEC) Rule 10b-5, which was promulgated under § 10 of the Exchange Act (see 17 C.F.R. § 240.10b-5).[1] Finally, plaintiff alleges one count of fraud and misrepresentation under § 10(b) of the Exchange Act and Rule 10b-5. Dkt. # 1, ¶¶ 53-80.

## I.

Plaintiff alleges that in early 2021, he hired Thompson as an investment advisor to help with investment strategy, capital raising, and the initial public offering for CAVU Resources, Inc. ("CAVU"),[2] a company with which plaintiff is affiliated as a member of the board of directors and the former chief executive officer. Dkt. # 1, ¶¶ 17-18. Soon thereafter, Thompson introduced plaintiff to Don Millen, Jr., a broker-dealer and investment banker at DragonFly. Id. ¶¶ 19-22. In April 2021, plaintiff and CAVU entered into an agreement with Thompson, Millen, and DragonFly to provide "exclusive" financial advisory and investment banking services. Id. ¶¶ 22-23. Thompson

---

[1]    In his complaint, plaintiff asserts one count of wrongful securities issuance under the "US Securities Exchange Act Section 10(b), and Rule 12(2)[,] 10(b)(5), et[] al." and one count of fraud and misrepresentation under "US Securities Exchange Act Section 10(b), and Rule 10(b)(5), et al." Dkt. # 1, ¶¶ 58-65, 66-80. As discussed below, the parties and the Court interpret plaintiff's assertion of a claim under "Rule 12" to mean § 12 of the Securities Act.

[2]    The company is referred to, interchangeably, as "CAVU," "CAVR," and "CAVA" Resources. Compare Dkt. # 1, ¶ 17, with Dkt. # 28, ¶ 8, and Dkt. # 8, at 6. Although the company is named "CAVU Resources, Inc.," it is publicly traded under the symbol "CAVR." Dkt. # 45, at 2. The Court refers to it as CAVU for consistency.

would receive payment as a percentage of the securities on which he provided advice, issued, or sold. Id. ¶ 23.  DragonFly would receive a retainer of $7,500 per month, in addition to 5% of gross proceeds from closing transactions, in an effort to raise $30 million for CAVU.  Id. ¶ 30.  Thompson was, according to plaintiff, registered as an investment advisor and broker with the Financial Industry Regulatory Authority (FINRA), and DragonFly was registered with the SEC.  Id. ¶¶ 34-36. However, plaintiff asserts that Thompson never disclosed his affiliation as an agent of DragonFly, nor was any connection to DragonFly disclosed in his publicly filed FINRA Central Registration Depository (CRD).  Id. ¶ 5.  Plaintiff states that during this time, he was given no information about Thompson's relationship with DragonFly or Thompson's relationship with another brokerage firm, Realta, with which plaintiff asserts Thompson is associated.  Id. ¶¶ 5, 31, 43-45.  Plaintiff also alleges that, contrary to his agreement with Thompson, Thompson was providing investment advice to other clients through a third-party investment advisor and broker-dealer.  Id. ¶ 37.

Thompson also introduced plaintiff to Singh, a local investor who regularly issued securities and instruments related to real estate projects.  Id. at ¶ 45.  According to plaintiff, Thompson, Singh, and Thompson's companies (Sine-Pari and DragonFly) raised $300,000 in capital for CAVU.  Id. ¶¶ 25-26.  Plaintiff claims that, in exchange for the capital, Thompson requested that plaintiff personally sign two promissory notes.  Id. ¶¶ 48, 50.  Plaintiff personally signed both notes, which

are dated September 20, 2021.  Id.; Dkt. # 11, at 3; Dkt. # 26-5, at 3.[3]  Plaintiff states that once the

makers (plaintiff and Live To Be Happy Inc, of which plaintiff signed the notes as chief executive

officer) defaulted on the notes, they issued stock for the value of the notes to Sine-Pari and Singh,

who, in turn, sued plaintiff in North Carolina court to recover the cash value of the notes.  Id. ¶ 51.

Plaintiff now seeks to allege one count of conspiracy under 42 U.S.C. § 1985 for defendants'

conspiracy of "issu[ing] unregulated  securities, to fraudulently misrepresent the nature of the

securities being issued, . . . while intentionally not disclosing their respective affiliations,

'compensation', [sic] and conflicts of interests [sic] as required under the federal securities

regulatory scheme."  Id. ¶ 54.  Plaintiff also seeks to assert one count of "wrongful securities

issuance" under § 10(b) of the Exchange Act, §12 of the Securities Act, and SEC Rule 10b-5, for

defendants' failure to register the securities issued to plaintiff, as well as for their failure to provide

required disclosures of "fees, commissions, interest, penalties, and risk" that plaintiff assumed.  Id.

---

[3]     Realta has attached to its motion as an exhibit one of the two promissory notes signed by
plaintiff, which is central to plaintiff's claims.  Dkt. # 11.  Thompson, Singh, Sine-Pari, and
Sparta attached to their motion as an exhibit the second of the two promissory notes signed
by plaintiff, which is again central to plaintiff's claims.  Dkt. # 26-2.  Generally, a court
deciding a motion to dismiss is unable to consider material beyond the four corners of the
complaint.  Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); Fuqua v. Santa Fe
Cnty. Sheriff's Off., 157 F.4th 1288, 1297 (10th Cir. 2025).  When a court does so, it is
required to treat a 12(b)(6) motion as a motion for summary judgment, and failure to do so
amounts to reversible error.  Foremaster v. City of St. George, 882 F.2d 1485, 1491 (10th
Cir. 1989); Torres v. First State Bank of Sierra Cnty., 550 F.2d 1255, 1257 (10th Cir. 1977).
A limited exceptions to this rule exists for "documents referred to in the complaint if the
documents are central to the plaintiff's claim and the parties do not dispute the documents'
authenticity."  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010) (quoting Jacobsen v.
Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002)).  A document referred to in a
complaint may "properly be considered only for what [it] contain[s], not to prove the truth
of [its] contents."  Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc., 889 F.3d 1153, 1158 (10th
Cir. 2018).  As neither party disputes the authenticity or centrality of these promissory notes
to plaintiff's claims, the Court notes the dates and sums shown on the notes, copies of which
have been provided to the Court.

¶ 62. In the same count, plaintiff asserts that defendants seek "a form of 'double-recovery'" for pursuing plaintiff for collection of and damages arising from the promissory notes that he signed. Id. ¶¶ 51, 64. Finally, plaintiff asserts one count of fraud and misrepresentation under § 10(b) of the Exchange Act and SEC Rule 10b-5. Id. ¶ 75. Plaintiff alleges that defendants failed to disclose that Thompson, Singh, DragonFly, Innovation Partners, Sparta, and Realta were all related parties. Id. ¶ 68. Acting in concert, those parties allegedly misrepresented their relationships in order to fraudulently collect fees from plaintiff for investment advice and now for debts allegedly owed on the notes plaintiff signed. Id. ¶¶ 75-78. For these three counts, plaintiff seeks $1.5 million in actual and compensatory damages, in addition to "statutory recission [sic] for the wrongfully issued securities" and attorney's fees and costs incurred. Id. at 15.

Plaintiff filed this matter in October 2025 (Dkt. # 1), and defendant Realta moved to dismiss for failure to state a claim upon which relief can be granted (Dkt. # 8). Subsequently, defendants Thompson, Singh, Sine-Pari, and Sparta filed a joint motion to dismiss for lack of personal jurisdiction. Dkt. # 25. Plaintiff responded to both motions (Dkt. ## 28, 29) and subsequently filed a motion for a preliminary injunction and a temporary restraining order to enjoin Singh and Sine-Pari from enforcing and collecting upon state-court collection proceedings regarding the promissory notes at issue here. Dkt. # 30, at 1; Dkt. # 31, at 1. Realta then replied to plaintiff's response (Dkt. # 38) and Thompson, Singh, Sine-Pari, and Sparta filed a joint reply (Dkt. # 39). Thompson, Singh, Sine-Pari, and Sparta filed a response in opposition to plaintiff's motions for a preliminary injunction and temporary restraining order (Dkt. # 42), to which plaintiff replied (Dkt. # 43). Finally, plaintiff filed a motion for joinder of CAVU as a proposed plaintiff, seeking to assert identical claims arising out of the same transaction or occurrence. Dkt. # 45, at 2. Realta responded (Dkt. # 47) and plaintiff

replied (Dkt. # 48).  These motions are now ripe for review.

## II.

### A.      Realta's Motion to Dismiss for Failure to State a Claim

When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted.  To survive a motion under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Tenth Circuit has interpreted the plausibility requirement to mean that if the allegations contained in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  Robbins v. Okla. ex. rel. Dep't of Hum. Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570).  The allegations must also "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim to relief."  Id. (footnote omitted).  Put differently, for a claim to survive a Rule 12(b)(6) motion, there must be "more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."  Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Twombly, 550 U.S. at 555); see also Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976) ("A motion to dismiss under Fed. Rules Civ. Proc., rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.").

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). The facts alleged "must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citation omitted) (citing 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2004)). For the purposes of making a dismissal determination, a court must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the claimant. Iqbal, 556 U.S. at 678-79.

In this case, plaintiff is proceeding pro se and, in accordance with Supreme Court and Tenth Circuit precedent, the Court must construe his pleadings liberally in ruling on Realta's motion to dismiss for failure to state a claim. Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002). "Although '[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,' . . . 'pro se parties [must] follow the same rules of procedure that govern other litigants.'" Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)). The generous construction to be given a pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

### 1.    Count One: Conspiracy Under 42 U.S.C. § 1985

Realta first seeks dismissal of the claim of conspiracy under 42 U.S.C. § 1985 against it. Dkt. # 8, at 4-5. Section 1985 makes it unlawful for "two or more persons in any State or territory

[to] conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under § 1985, a plaintiff must allege sufficient facts to show "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). The statute specifically contemplates conspiracies "aimed at interfering with rights that are protected against private, as well as official, encroachment." Id. (quoting United Bhd. of Carpenters & Joiners of Am. Local 610 v. Scott, 463 U.S. 825, 833 (1983)). Section 1985 does not apply to all conspiracies; rather, it applies "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Griffin, 403 U.S. at 101-02).

Plaintiff's § 1985 claim against Realta is based on the allegation that Realta conspired with the other named defendants to "issue unregistered securities, to fraudulently misrepresent the nature of the securities being issued . . . while intentionally not disclosing their respective affiliations, 'compensation', [sic] and conflicts of interests as required under the federal securities regulatory scheme." Dkt. # 1, ¶ 54. More specifically, plaintiff claims that, in his "Broker Check Report," Thompson "stated he was working for, with, and had ownership in Sine-Pari, LLC, Sparta Wealth Partners, Innovation Partners, LLC, and REALTA Equity Partners, LLC." Id. ¶ 55. Realta's alleged involvement in this conspiracy stems from Thompson's association with Realta as an investment agent. See id. ¶¶ 3, 44, 52. Beyond Thompson's general association with Realta, it is unclear in what ways or in what actions Realta engaged, in furtherance of a conspiracy to deprive plaintiff of equal protection or privileges and immunities, and what injury plaintiff suffered as a result. Nor does

plaintiff's complaint make clear what the relationship between Thompson and Realta was, such that Thompson's actions or omissions are attributable to or impact Realta. Although an allegation of conspiracy may give rise to a plaintiff asserting that multiple defendants acted in concert, the minimum pleading requirements imposed by Rule 12(b)(6) still mandate "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphases in original) (discussing the importance of notice pleading in the context of allegations against multiple government actors and agencies).

Most critically, while plaintiff alleges that Thompson stated he was working for Realta, he does not specify that Thompson was affiliated with Realta during the events that comprise plaintiff's claim. See Dkt. # 1, ¶ 55. As Realta underscores, plaintiff's conspiracy claim is entwined with the signing of two promissory notes, both of which are dated September 20, 2021; however, Thompson's affiliation with Realta began on May 12, 2023. Dkt. # 38, at 7 (citing Dkt. # 11, at 2). Plaintiff's own complaint supports this argument. Attached as an exhibit to plaintiff's complaint is a FINRA report for Thompson, showing that Thompson's affiliation with Realta dates back to May 12, 2023. See Dkt. # 1, at 26 (showing his approval as an agent for Realta in the states of Florida, Nevada, and South Carolina as dating to 5/12/23). Plaintiff argues that it is Realta's burden to show that Thompson is not and was not a registered representative working with them during the events alleged in his complaint and that this constitutes a disputed fact for which discovery would be appropriate. Dkt. # 28, at 5. This argument misstates both Realta's burden and the facts as alleged in plaintiff's complaint. Rather, on a motion to dismiss for failure to state a claim, the Court's role is "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." Sutton, 173 F.3d at 1236 (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)). Based on the facts alleged in plaintiff's complaint as to Realta, plaintiff fails to establish any connection between Realta and Thompson during the events at issue in this case, nor does plaintiff assert any facts that show that Realta was connected to or acted in furtherance of a conspiracy. Even construing plaintiff's complaint as a pro se litigant liberally and accepting as true all well-pled allegations, plaintiff fails to allege how Realta acted in furtherance of a conspiracy to deprive plaintiff of equal protection or privileges and immunities. Plaintiff has failed to state a claim upon which relief can be granted as to his claim of conspiracy under § 1985 against Realta.

### 2. Count Two: Wrongful Securities Issuance Under § 12 of the Securities Act

Realta next argues for dismissal of plaintiff's claim of "wrongful securities issuance," under § 10(b) of the Exchange Act, and "Rule 12(2)[,] and 10(b)(5), et[] al." As Realta points out, although plaintiff's complaint refers to § 10(b) of the Exchange Act, plaintiff's claim seems to arise not under the Exchange Act or SEC Rule 12, but rather under § 12 of the Securities Act. See 15 U.S.C. § 77$l$(a)(2). Section 12(a)(2) "imposes liability on any person who 'offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading." Section 12(a)(2) has no requirement that a plaintiff "allege scienter, reliance, or loss causation." United Food & Comm. Workers Union Local 880 v. Chesapeake Eng'y Corp., 774 F.3d 1229, 1233 (10th Cir. 2014) (quoting In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (10th Cir. 2010)). Rather, a plaintiff can allege any one of three possible bases for liability, "based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure

obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading." Id. (quoting Morgan Stanley, 592 F.3d at 360).

For the purpose of this motion, Realta accepts as true that the promissory notes, which are the subject of plaintiff's claims, are securities.[4] Dkt. # 8, at 6; id. n.2. At issue is whether plaintiff alleges facts to support the conclusion that he was the "purchaser" of the notes and therefore has standing under the Securities Act. Id. Realta contrasts the Securities Act, under which plaintiff's claim for "wrongful securities issuance" arises, from the Exchange Act, in that the Exchange Act applies to both purchasers and sellers of securities, whereas the Securities Act applies only to purchasers. Dkt. # 8, at 5-6. The Tenth Circuit, in Katz v. Gerardi, 655 F.3d 1212 (10th Cir. 2011), addressed this issue, stating that § 12(a)(2) of the Securities Act "provide[s] relief *only* for purchasers—*not* sellers—of securities." Id. at 1220 (emphases in original) (citing 15 U.S.C. § 77*l*(a) ("Any person who . . . offers or sells a security . . . shall be liable . . . to the person purchasing such security." )). In the absence of a showing that a plaintiff is the purchaser of a security, a plaintiff lacks standing to bring a claim under the Securities Act. Id. at 1223. Here, both promissory notes name as "makers" plaintiff and Live To Be Happy Inc, of which plaintiff signed the notes as chief executive officer. Dkt. # 11, at 2-4; Dkt. # 26-6, at 1-2. One note was issued to "payee" Singh for $210,000 and the other was issued to "payee" Sine-Pari for $42,000, and both notes were to be paid by December 30, 2021, subject to a 9% annual interest rate. Dkt. # 11, at 2; Dkt. # 26-6, at 1. By plaintiff's own

---

[4]     Realta assumes that the notes at issue here are securities, but it observes that in order to determine whether these promissory notes are securities, the Court would conduct the "family resemblance" test as applied in Securities & Exchange Commission v. Thompson, 732 F.3d 1151, 1161 (10th Cir. 2013), and set out in Reves v. Ernest & Young, 494 U.S. 56 (1990), analyzing such factors as "motivation, distribution, expectation, and risk," to determine "whether a note is a security" on both factual and legal bases. Thompson, 732 F.3d at 1161 (quoting U.S. v. McKye, 734 F.3d 1104, 1108-09 (10th Cir. 2013)).

admission, he and Live To Be Happy "issued" the notes.  Dkt. # 28, at 7; Dkt. # 1, ¶ 51.  Although

plaintiff argues that he was advised to issue these securities through fraud and misrepresentation, he

does not meaningfully dispute that he was the issuer or maker, nor does he allege facts to support the

conclusion that he was the purchaser.  Rather, plaintiff and his company received an immediate influx

of cash from Singh and from Thompson's company, Sine-Pari, in exchange for plaintiff's issuance

of the two notes.  See Thompson, 732 F.3d at 1164 (characterizing "buyers" of non-securities notes

as motivated by profit, whereas "sellers" are "ordinarily consumers or businesses motivated to correct

temporary cash-flow difficulties or to make one-time purchases of items which will function as direct

collateral in case of default").  Based on the facts as alleged in the complaint and on the language of

the promissory notes on which plaintiff's claim for "wrongful securities issuance" is predicated,

plaintiff fails to allege facts that would allow the Court to find that he has stated a claim under §

12(a)(2) of the Securities Act.

> **3.     Count Three: Fraud and Misrepresentation Under § 10(b) of the Exchange Act and SEC Rule 10b-5**

Finally, Realta argues that plaintiff has failed to state a claim of fraud and misrepresentation,

under § 10(b) of the Exchange Act and Rule 10b-5.  Dkt. # 8, at 5-8.  "Section 10(b) of the Securities

Exchange Act and Rule 10b-5 promulgated thereunder 'prohibit making any material misstatement

or omission in connection with the purchase or sale of any security.'" Lingam v. Dish Network Corp.,

167 F.4th 1094, 1099 (10th Cir. Feb. 17, 2026) (quoting Smallen v. W. Union Co., 950 F.3d 1297,

1304 (10th Cir. 2020)).  A plaintiff alleging a violation of § 10(b) and Rule 10b-5 must make a

showing to meet five elements of the claim:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state
> a material fact necessary to make statements not misleading; (2) the statement complained of

was made in connection with the purchase or sale of securities; (3) *the defendant acted with scienter, that is, with intent to defraud or recklessness*; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

Smallen, 950 F.3d at 1304 (emphasis in original) (quoting In re Zagg, Inc. Sec. Litig., 797 F.3d 1194, 1200 (10th Cir. 2015)).  As the Tenth Circuit has noted, a "§ 10(b) plaintiff 'bears a heavy burden at the pleading stage.'" Zagg, 797 F.3d at 1201 (quoting Weinstein v. McClendon, 757 F.3d 1110, 1112 (10th Cir. 2014)); Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSysems Holdings, Inc., 79 F.4th 1209, 1216 (10th Cir. 2023).  This is because § 10(b) and Rule 10b-5 are governed by the pleading standard established in the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, 109 Stat. 602 (codified as amended in scattered sections of 15 U.S.C.), which requires "plaintiffs to state with particularity both the facts constituting the alleged violations, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" Tellabs v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007).  "[S]ecurities plaintiffs cannot allege generally that the defendant acted with scienter, as Fed. R. Civ. P. 9(b) allows"; rather, they must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Overstock, 119 F.4th at 798 (quoting 15 U.S.C. § 78u-4(b)(2)). Strong proof of scienter may be shown through allegations about a defendant's conduct alone; however, this requires a showing that "defendants (1) acted in 'an extreme departure from the standards of ordinary care' and (2) presented 'a danger of misleading buyers or sellers' that was . . . known to the defendants or . . . so obvious that the defendants must have been aware of the danger." Meitav Dash Provident Funds & Pension, 79 F.4th at 1216 (alterations in original) (quoting Anderson v. Spirit

13

Aerosystems Holdings, Inc., 827 F.3d 1229, 1237 (10th Cir. 2016)).[5]

Plaintiff's central allegation as to Realta's involvement in fraud or misrepresentation is that, based on Thompson's employment at Realta, Realta owed plaintiff a "statutory and fiduciary duty to supervise the disclosure and regulatory compliance and activity of . . . Thompson as a registered individual under contract with [it]." Dkt. # 1, ¶ 44. Yet, this allegation is a legal conclusion lacking well-pled facts to support it. The only well-pled facts contained in the complaint relating to Realta, specifically, are that Thompson is presently a general securities and investment agent of Realta (id. ¶ 3), that Realta did not provide plaintiff with disclosures prior to the receipt of the notes from plaintiff (id. ¶ 52), and that Realta is a "related party" to all other named defendants (id. ¶ 68). Plaintiff offers no factual basis that would allow the Court to reach the conclusion plaintiff draws. It is unclear from plaintiff's complaint whether Realta employed Thompson during such a time and in such a capacity that liability for Thompson's actions as alleged would be appropriate.

Even if plaintiff had properly alleged that Thompson failed to provide plaintiff with a statement of material facts necessary to correct misleading statements he had made in connection with the making and giving of the promissory notes, and even if plaintiff had properly alleged sufficient facts to show that Thompson's actions in 2021 were attributable to Realta such that it owes a fiduciary duty to plaintiff, plaintiff would still have to meet the heavy burden of alleging that Realta had the scienter required to be liable for a violation of § 10 or Rule 10b-5. Plaintiff's burden under § 10(b) and Rule 10b-5 is to show that "*the danger of misleading buyers . . . must be actually known or so*

---

[5]    The parties dispute the requisite pleading standard for a claim arising under Rule 10b-5, in that plaintiff asserts that conduct alone is sufficient to prove scienter (Dkt. # 28, at 4) and Realta argues that a heightened pleading standard for an allegation of fraud comparable to that of Rule 9(b) applies here (Dkt. # 38, at 4).

obvious that any reasonable man would be legally bound as knowing." City of Phila. v. Fleming Cos., 264 F.3d 1245, 1260-61 (quoting Sclifke v. Seafirst corp., 866 F.2d 935, 946 (7th Cir. 1989)). Allegations of simple negligence cannot satisfy the scienter requirement. Id. As discussed above, the heavy burden that the PSLRA imposes on § 10 and Rule 10b-5 claims cannot be met with allegations of generalized intent to defraud. Accepting as true all well-pled facts and construing plaintiff's complaint liberally, as is required of pro se litigants' pleadings, plaintiff still fails to show that Realta knew of the potentially material fact (i.e., the existence of a purported connection between Thompson and the other parties), and that Realta knew that the failure to reveal the potentially material fact would likely mislead investors. Plaintiff's complaint lacks allegations to support the conclusion that Realta's conduct—that it employs Thompson, did not provide plaintiff with disclosures prior to the issuance of the notes, and is connected to the other defendants—was "an extreme departure from the standards of ordinary care, and . . . presents a danger of misleading buyers and sellers that is either known to the defendants or is so obvious that the actor must have been aware of it." Fleming, 264 F.3d at 1258. For these reasons, the Court concludes that plaintiff has not stated a claim upon which relief can be granted as to his claim for fraud and misrepresentation against Realta.

**B.      Motion to Dismiss for Lack of Personal Jurisdiction**

Next, defendants Thompson, Singh, Sine-Pari, and Sparta move to dismiss plaintiff's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(2). When a defendant moves under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendants. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2)

motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citing Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996)). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id. As with other motions to dismiss, and as discussed above, a court must construe the complaint of a pro se litigant liberally, "holding him 'to a less stringent standard than formal pleadings drafted by lawyers.'" Greer v. Moon, 83 F.4th 1283, 1292 (10th Cir. 2023) (quoting Hall, 935 F.2d at 1110). In practice this means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall, 935 F.2d at 1110. However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Plaintiff's claims against Thompson, Singh, Sine-Pari, and Sparta arise under 42 U.S.C. § 1985, § 10(b) of the Exchange Act, § 12 of the Securities Act, and SEC Rule 10b-5, all of which are federal statutes within the meaning of federal question jurisdiction. In a case that arises under a

federal question, a district court cannot exercise personal jurisdiction over a defendant until it determines "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of personal jurisdiction comports with due process.'" Peay v. BellSouth Medical Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 942 (11th Cir. 1997)).

Three statutes are at issue here. First, 42 U.S.C. § 1985 "does not, by itself, confer nationwide service of process or jurisdiction upon federal courts to adjudicate claims." Trujillo v. Williams, 456 F.3d 1210, 1217 (10th Cir. 2006) (discussing 42 U.S.C. § 1983, which, like § 1985 does not authorize nationwide service of process or jurisdiction). Rather, under Federal Rule of Civil Procedure 4(k)(1)(A), service of process is limited by the Oklahoma long-arm statute, which is coextensive with constitutional limitations imposed by the Due Process Clause. Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 834-35 (Okla. 2004). Given that the Oklahoma long-arm statute extends jurisdiction to the fullest extent allowable by the Constitution, the personal jurisdiction analysis becomes a single-step inquiry. See Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 904 (10th Cir. 2017) (analyzing Colorado's long-arm statute, which, like Oklahoma's, "extends jurisdiction to the Constitution's full extent").

Next, both the Exchange Act and the Securities Act authorize service of process by the following identical language: "Any suit or action to enforce any liability or duty created by this [act] . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. §§ 78aa(a), 77v(a). Both acts, therefore, "permit[] the exercise of personal jurisdiction to the limits of the Due

17

Process Clause." Application to Enforce Admin. Subpoenas Duces Tecum of Sec. Exch. Comm'n v. Knowles, 87 F.3d 413, 417 (10th Cir. 1996) (citing Sec. Exch. Comm'n v. Unifal SAL, 910 F.2d 1028, 1033 (2d Cir. 1990)). The Court is therefore left to determine whether exercising jurisdiction over defendants comports with the Due Process Clause. Peay, 205 F.3d at 1212 ("Accordingly, we hold that in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires plaintiff's choice of forum to be fair and reasonable to the defendant.").[6]

"The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). Such minimum must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id.

---

[6]   In his response to this motion, plaintiff argues, inter alia, that the Exchange Act authorizes nationwide service of process, such that he need only show that defendants have minimum sufficient contacts with the United States and not any particular state. Dkt. # 29, at 6. Plaintiff finds support for this proposition in Securities Investor Protection Corp. v. Vingman, 764 F.2d 1309 (9th Cir. 1985), and Ritter v. Zuspan, 451 F. Supp. 926 (E.D. Mi. 1978), two cases from authorities not binding on this Court. Dkt. # 29, at 10-11. As defendants argue, the Tenth Circuit, a binding authority, has addressed and rejected the adoption of "the so-called 'national contacts test,' [under which] a plaintiff could sue a defendant in any federal court of the United States, regardless of the defendant's contacts with the forum or the burden on the defendant of litigating in that forum." Peay v. BellSouth Med. Assist. Plan, 205 F.3d 1207, 1211 (10th Cir. 2000). Of that test, the Tenth Circuit concluded the following: "We are convinced that due process requires something more." Id. (distinguishing the holding from Application to Enforce Admin. Supboenas Duces Tecum of the Sec. Exch. Comm'n v. Knowles, 87 F.3d 413 (10th Cir. 1996), in that the national contacts test was applicable in that limited circumstance, in which extraterritorial service of an SEC subpoena duces tecum was held to be appropriate based on national contacts). As that the Tenth Circuit has held that the proper jurisdictional analysis for a statute authorizing nationwide service of process remains an analysis of minimum contacts with the state and an assessment of whether "the assertion of personal jurisdiction would comport with fair play and substantial justice," the Court analyzes those in turn. Peay, 205 F.3d at 1212 (quoting Burger King Corp., 471 U.S. at 476).

18

"When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colom. v. Hall, 466 U.S. 408, 414-16, 414 n.9 (1984)).   Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp., 471 U.S. at 472).

### 1.      General Personal Jurisdiction

Plaintiff does not argue that the Court has general jurisdiction over any of the defendants, and the Court finds that it could not exercise general jurisdiction over Thompson, Singh, Sine-Pari, or Sparta.  For the Court to exercise general personal jurisdiction over a defendant, the defendant's contacts with the state must be "so 'continuous and systematic' that the person is essentially at home in the State." Xmission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020) (quoting Old Republic, 877 F.3d at 904).  Plaintiff alleges that Thompson and Singh are not residents of Oklahoma. Dkt. # 1, ¶ 2 (alleging that Thompson is a resident of North Carolina); id. ¶ 8 (alleging that Singh is a resident of North Carolina); Dkt. # 26, at 7; Dkt. # 26-1, ¶ 2 (affirming that Thompson is a resident of North Carolina); Dkt. # 26-2, ¶ 2 (affirming that Singh is a resident of South Carolina).  Likewise, Sine-Pari, by and of which plaintiff alleges Thompson is employed and a principal (Dkt. # 1, ¶ 7), and Sparta, which plaintiff alleges Thompson owns and operates (Dkt. # 1, ¶ 13), are North Carolina limited liability companies, with principal places of business in North Carolina and no affiliations with the state of Oklahoma (Dkt. #  26 4, ¶¶ 1-2; Dkt. # 26, ¶ 4).  Plaintiff offers no evidence that defendants, as residents of North Carolina and South Carolina, conduct business or have systematic

and continuous contacts with the state of Oklahoma, such that they could be considered "at home in the State." Xmission, 955 F.4d at 840. Therefore, the only path for asserting personal jurisdiction would be through a showing that the Court can exercise specific personal jurisdiction.

### 2.    Specific Personal Jurisdiction

Specific jurisdiction requires courts to complete a two-step analysis. First, courts "must consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting World-Wide Volkswagen, 444 U.S. at 297). To do so, courts "determine whether the defendant has sufficient minimum contacts with the forum." Zenergy, Inc. v. Coleman, No. 19-CV-381-CVE-FHM, 2009 WL 3571314, at *5 (N.D. Okla. Oct. 26, 2009) (citing OMI Holdings, 149 F.3d at 1091). If such minimum contacts exist, then courts must "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" Benton, 375 F.3d at 1075 (quoting OMI Holdings, 149 F.3d at 1091). A defendant must have such minimum contacts with the forum state that it has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state.'" OMI Holdings, 149 F.3d at 1091 (citing Burger King, 471 U.S. at 472; Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987)). Contacts exist "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations'" between

himself and residents of the forum.'" Burger King, 471 U.S. at 475-76 (first quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984), then quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 648 (1950)). In order for a defendant's contacts with the forum state to serve as the basis for personal jurisdiction, the plaintiff's claims must also arise out those contacts. See OMI Holdings, 149 F.3d at 1095 (citing Asahi, 480 U.S. at 109). The Court will separately consider whether plaintiff has alleged facts as to each defendant that would meet plaintiff's burden to make a prima facie showing that the defendant has sufficient minimum contacts with the forum to support this Court's exercise of personal jurisdiction. Only once the Court establishes that minimum contacts exist—such that the defendants directed their conduct and activities toward the forum state and plaintiff's claims arise out of those contacts—must the Court then determine whether exercising personal jurisdiction would be "reasonable." OMI Holdings, 149 F.3d at 1091.

Here, plaintiff argues that defendants have purposefully directed their activities at the residents of the forum in that they have conspired to fraudulently "double-recover on plaintiff's promissory notes by both accepting stock issuances that resulted from the default on those notes and are suing plaintiff in the District Court of Tulsa County for the cash value of the notes. Dkt. # 29, at 10-11; see Sine-Pari LLC v. Cox, No. CV-2024-2413 (Tul. Cnty. Okla. 2024); Singh v. Cox, No. CV-2024-2414 (Tul. Cnty. Okla. 2024). Plaintiff asserts that defendants' decision to pursue a collection action against plaintiff in Oklahoma state court demonstrates "purposeful availment" of the state's benefits and protections. Id. at 11. Defendants respond that their contact with Oklahoma is limited to the domestication of a judgments they received from a North Carolina court, related to the promissory notes at issue here. Dkt. # 39, at 4. Defendants argue that domestication of a foreign judgment is insufficient, unto itself, to confer personal jurisdiction over a foreign defendant. Dkt. # 39, at 5-6.

They underscore that the domestication of the North Carolina judgment is their sole connection to the forum and they otherwise have no contact with Oklahoma, such that they could have anticipated being haled into Oklahoma court and the exercise of jurisdiction would not have offended "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316; see Dkt. # 26, at 9-10. Thompson and Singh affirm that they have never resided in Oklahoma, maintained an office or owned property in the state, conducted business in the state, paid taxes in the state, or otherwise have any connection to the state, aside from the collection action related to the promissory notes at issue. Dkt. # 26-1; Dkt. # 26-3; Dkt. # 26-2. On behalf of Sparta, Thompson affirms that the company has never had an office in the Oklahoma, paid taxes in the state, or conducted or solicited business in the state. Dkt. # 26-4. Likewise, defendants assert that Sine-Pari is a North Carolina limited liability company, the sole member of which is Thompson, who has no connections to and has not conducted business in Oklahoma. Dkt. # 26, ¶ 4. It is plain that defendants' contacts with the forum are limited to only their domestication of a judgment following a lawsuit in North Carolina, in which plaintiff entered a confession of judgment pursuant to the terms of a settlement agreement. Sine-Pari v. Cox, No. CV-2024-02413 (Tul. Cnty. Okla. Oct. 10, 2024), Dkt. # 3 (quoting Sine-Pari, LLC v. Cox, No. 24-CV-14868-590 (N.C. Mecklenburg Cnty. Sup. Ct. Div. Nov. 3, 2023)); Singh v. Cox, No. CV-2024-02414 (Tul. Cnty. Okla. Oct. 10, 2024), Dkt. # 3 (quoting Singh v. Cox, No. 24-CV-15249-590 (N.C. Mecklenburg Cnty. Sup. Ct. Div. Nov. 3, 2023)).

As defendants argue, the Tenth Circuit in Anzures v. Flagship Restaurant Group, 819 F.3d 1277 (10th Cir. 2016), held that a defendant whose contacts with the state of Colorado were primarily based on activity related to a lawsuit, which did not suffice to support a finding of personal jurisdiction, in that there were insufficient minimum contacts. There, the court concluded that

"defendants' suit-related conduct did not create any meaningful contacts with Colorado itself, and the fact that [plaintiff] was affected in Colorado (because he resides there) is insufficient to authorize personal jurisdiction over defendants." Id. at 1281. In that case, the Tenth Circuit applied the holding in Walden v. Fiore, 571 U.S. 277 (2014), in which the Supreme Court concluded that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,] [b]ut a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Id. at 286. Plaintiff argues that, contrary to Tenth Circuit and Supreme Court precedent, the domestication of the North Carolina judgment in an Oklahoma court and the activities that arise therefrom alone are sufficient minimum contacts to establish personal jurisdiction. Dkt. # 29, at 12. Plaintiff cites to no authority to support this proposition. Id. at 12.[7] The Court is unable to conclude that Thompson, Singh, Sine-Pari, and Sparta have sufficient minimum contacts with the state of Oklahoma such that they purposefully availed themselves of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws, based solely on collection actions by Singh and Sine-Pari seeking to domesticate a North Carolina judgment against plaintiff, as an Oklahoma resident. See Hanson, 357 U.S. at 253. Because the Court does not find that defendants deliberately engaged in significant activities in the state or created continuing obligations between themselves and the forum, it need not

---

[7]    Defendants, not plaintiff, point out that in one case decided by the Ninth Circuit, the court found that defendants had sufficient minimum contacts with the forum sufficient to confer specific jurisdiction based on both the domestication of a foreign judgment because they had attempted to extract greater payment than was lawfully due by the foreign judgment. See Menken v. Emm, 503 F.3d 1050, 1061 (9th Cir. 2007). Defendants meaningfully distinguish the facts of Menken, given that, unlike in this case, Singh and Sine-Pari's Oklahoma collection actions seek no more than the amount awarded in the North Carolina judgment Dkt. # 39, at 5.

determine whether plaintiff's claims arise out of such contacts.  See OMI Holdings, 149 F.3d at 1091, 1095.   As these defendants do not have minimum contacts with Oklahoma, the claims against Thompson, Singh, Sine-Pari, and Sparta will be dismissed for lack of personal jurisdiction.

**C.      Preliminary Injunction/Temporary Restraining Order**

Plaintiff has moved for a preliminary injunction and temporary restraining order to enjoin Singh and Sine-Pari from pursuing a collection action in Oklahoma state court, which is based on the domestication of a judgment that was entered in state court in North Carolina.  Dkt. # 30, at 1.  Singh and Sine-Pari have begun an action in Tulsa County District Court, in an attempt to enforce a judgment from a North Carolina state court, in which plaintiff swore a confession of judgments based on his failure to pay Singh and Sine-Pari for defaulting on the promissory notes plaintiff signed under allegedly fraudulent pretenses.  See Dkt. # 42, at 3; Dkt. # 30, at 2.  At issue is whether plaintiff has met the burden required to merit a preliminary injunction or temporary restraining order.  The Tenth Circuit has described a preliminary injunction as an "extraordinary equitable remedy designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'"  Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1225 (10th Cir. 2009) (quoting Univ. Of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  To be entitled to a preliminary injunction, the moving party must establish the following:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001).  Given that a preliminary injunction is such an extraordinary remedy, the "right to relief must be clear and unequivocal."  Utah Licensed Beverage

24

Ass'n v. Leavitt, 256 F.3d 1061, 1066 (10th Cir. 2001) (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)).

Of the four factors a plaintiff is required to establish to be entitled to a preliminary injunction, "probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." DTC Energy Group, Inc. v. Hirschfeld, 912 F.3d 1263, 1270 (10th Cir. 2018). To meet his burden, the "moving party must demonstrate that such injury is likely before the other requirements will be considered." Id. "Proving irreparable harm . . . is not 'an easy burden to fulfill,'" and there must be "a significant risk that [the moving party] will experience harm that cannot be compensated after the fact by money damages." Husky Ventures, Inc. v. B55 Investments, Ltd., 911 F.3d 1000, 1011 (10th Cir. 2018). "Purely speculative harm will not suffice," and a plaintiff must show that the threatened harm "is likely to occur before the district court rules on the merits of the case." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009). The Tenth Circuit has summarized its precedent as to irreparable harm to require that the moving party's injury "must be both certain and great, and that it must not be merely serious and substantial." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1262 (10th Cir. 2004). The Tenth Circuit has also consistently held that economic loss, by itself, does not generally constitute irreparable harm. Port City Props. v. Union Pac. R. Co., 518 F.3d 1186 (10th Cir. 2008); Schrier v. Univ. of Colo., 427 F.3d 1253 (10th Cir. 2005); Heideman v. S. Salt Lake City, 348 F.3d 1182 (10th Cir. 2003).

Plaintiff has not met his burden to establish that he will suffer irreparable harm if the collection action is allowed to proceed. Plaintiff argues that without interim injunctive relief, he would risk "cascading harms" that "monetary damages would be inadequate" to remedy. Dkt. # 30, at 7. Plaintiff generally asserts that his business relationships, credit, and goodwill would be in

25

jeopardy because he risks "execution, liens, and garnishments" as a result of the Oklahoma court's enforcement of and defendants' collection on the notes at issue. Id.  Although plaintiff argues that the harms he faces would be irreparable, each of the harms he enumerates is synonymous with economic loss. "[I]ntangible harms such as the loss of goodwill or competitive market position" may be the basis for a finding of irreparable harm beyond economic loss that would meet a litigant's burden. Dominion Video, 356 F.3d at 1264.  However, even if harm other than pure economic loss is alleged, when those losses can be quantified and money damages would adequately make that litigant whole, those injuries do not suffice to show irreparable harm.  First W. Cap. Mgmt Co. v. Malamed, 874 F.3d 1136, 1143 (10th Cir. 2017).  The relief sought in plaintiff's motion is insufficient to merit temporary injunctive relief because each type of injury can be remedied by a judgment on the merits. See Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003) (requiring a showing of "significant risk that [the litigant] will experience harm that cannot be compensated after the fact by money damages").  Each of the "cascading harms" listed—impaired credit or business relationships, garnishment and reputational injury, and loss of customers and forced liquidation—squarely meets the Tenth Circuit's descriptions of losses quantifiable by money damages that do not meet the heavy burden required of the extraordinary remedies sought.  As plaintiff has not met the "single most important prerequisite for the issuance of a preliminary injunction," his motion for temporary injunctive relief, both as to a preliminary injunction and a temporary restraining order, must be denied.  See DTC Energy Group, Inc. v. Hirschfeld, 912 F.3d 1263, 1270 (10th Cir. 2018).

**D.    Joinder of Plaintiff CAVU Resources, Inc.**

Finally, plaintiff moves for leave to add a plaintiff, seeking to join as a proposed additional plaintiff his company, CAVU Resources, Inc.  Dkt. # 45.  Plaintiff argues that CAVU, a Nevada corporation that is headquartered in Tulsa, Oklahoma, "stands in the same position as plaintiff," asserting materially similar claims that arise from the same transaction and share common questions of law and fact as those raised by plaintiff.  Id. at 2.  Rule 20 permits joinder of plaintiffs in one action if plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all plaintiffs will arise in the action."  FED. R. CIV. P. 20(a)(1).  Even if a plaintiff makes the requisite showings, "the rule is permissive; whether to allow such joinder is left to the discretion of the trial judge."  Hefley v. Textron, Inc., 713 F.2d 1487, 1499 (10th Cir. 1983).  Plaintiff alleges that he sought the investment advice at issue in his claims in an effort to raise capital and strategize on behalf of CAVU, in preparation for an initial public offering.  Dkt. # 1, ¶ 18.  Plaintiff does not, however, allege that CAVU was a signatory to either promissory note at issue.  Plaintiff's claims arise out of the issuance of securities, which plaintiff argues are the two promissory notes dated 2021.  Id. ¶¶ 58-80.  Without any stated nexus between the so-called securities at issue and CAVU, the Court sees no avenue by which CAVU could assert the same or similar claims arising out of the same transaction or occurrence with similar questions of law and fact.  Having failed to show that CAVU could assert a right to relief arising out of the same transaction or occurrence with common questions of law or fact, plaintiff's motion to join CAVU under Rule 20(a)(1) must be denied.

## III.

In sum, plaintiff fails to state a claim upon which relief can be granted as to Realta. Plaintiff fails to allege sufficient facts to show that Realta acted in furtherance of a conspiracy under § 1985. His claim against Realta as to a breach of § 12 of the Securities Act must also fail as a matter of law, in that plaintiff did not allege that he was the purchaser of the notes at issue. Finally, his claim under § 10 of the Exchange Act and SEC Rule 10b-5 are similarly subject to dismissal because plaintiff does not allege sufficient facts to show that Realta, specifically, rather than defendants in general, had any fiduciary duty to plaintiff. Next, plaintiff has failed to show that this Court has personal jurisdiction over Thompson, Singh, Sine-Pari, and Sparta. Although Singh and Sine-Pari have commenced a collection action in Oklahoma state court, in an attempt to collect on a judgment rendered in a North Carolina court pursuant to plaintiff's non-payment of the promissory notes, that is insufficient to provide minimum contacts out of which personal jurisdiction can be established. Barring the one collection action, it is evident that Thompson, Singh, Sine-Pari, and Sparta have no other connections to this forum on which the exercise of personal jurisdiction could be predicated. Furthermore, plaintiff's motions for interim injunctive relief are denied, given that plaintiff does not show how the collection action proceeding in Tulsa County District Court by Singh and Sine-Pari would pose irreparable harm. Plaintiff's arguments rest on the same basis of economic loss, which the Tenth Circuit has established is, unto itself, insufficient to support a finding. Without any other showing of irreparable harm, plaintiff's motion for interim injunctive relief must be denied. Additionally, plaintiff's motion to join CAVU Resources as a proposed plaintiff must also be denied, as plaintiff does not show how CAVU, which is not a signatory to the two notes at issue here, could

have similar or the same claims arising out of the same transaction or occurrence with similar questions of law or fact.

Finally, one defendant, DragonFly, has not yet entered an appearance. Service of process on DragonFly was due on or before January 7, 2026; however, plaintiff neither served DragonFly nor sought an extension of time in which to do so. The Court has no basis on which to conclude that DragonFly is a properly served defendant in this case and therefore dismisses any claims against it.

**IT IS THEREFORE ORDERED** that the motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) by Realta Equities, Inc. (Dkt. # 8) is **granted**. **Realta Equities, Inc. is terminated as a party to this action**.

**IT IS FURTHER ORDERED** that the motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) by David Thompson, Pradeep Singh, Total Solutions Enterprise, LLC (d/b/a Sparta Wealth Partners), and Sine-Pari, LLC (Dkt. # 25) is **granted**. **David Thompson, Pradeep Singh, Total Solutions Enterprise, LLC (d/b/a Sparta Wealth Partners), and Sine-Pari, LLC are terminated as parties to this action**.

**IT IS FURTHER ORDERED** that plaintiff's motions for preliminary injunction (Dkt. # 30) and temporary restraining order (Dkt. # 31) are **denied**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave under Federal Rule of Civil Procedure 20(a)(1) to add CAVU Resources, Inc. (Dkt. # 45) as a plaintiff is **denied**.

**IT IS FURTHER ORDERED** that all claims against Dragon Fly Capital Partners, LLC are **dismissed** as for lack of service of process. **Dragon Fly Capital Partners, LLC is terminated as a party to this action**.

**DATED** this 4th day of August, 2026.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE